David Winston LOVING, Appellant,

v.

The STATE of Texas, Appellee.

No. 53165.

Court of Criminal Appeals of Texas.

May 3, 1977.

Dissenting on Appellant's Motion for Rehearing Dec. 21, 1977.

---

Donald W. Rogers, Jr., Houston, for appellant.

Carol S. Vance, Dist. Atty., Robert A. Shults and Sam Adamo, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

BROWN, Commissioner.

This is an appeal from a conviction for murder. Appellant was tried before a jury which assessed his punishment at sixty (60) years in the Texas Department of Corrections.

Although the sufficiency of the evidence is not challenged, a brief summary of the facts will be necessary in order to dispose of appellant's three grounds of error.

Joseph Fagan testified that he and the deceased, Freddie Melancon, went to the Country Inn during the evening hours of August 22, 1974. Fagan said they drank one or two beers and sat at the bar talking. He said Melancon left the bar for a few minutes and danced with a woman in the next room then returned to the bar and continued drinking. Fagan said appellant and Ernest Tress then walked up to them at the bar and "the trouble started." He said he exchanged words with Tress and appellant hit Melancon over the head with a beer can and a pool cue and then the fight began. Fagan said that during the fight he saw appellant with a pair of pool cues in one hand and a large kitchen butcher knife in the other hand. He further stated that all four men were fighting with each other and that Tress and Melancon fought with each other while he and appellant fought around the pool table. He said the fight broke up when appellant's wife came in and dragged him out of the bar. He said he and Melancon sat down at the bar again and talked for a few minutes and Melancon said he was not hurt. Melancon then slumped over the bar and an ambulance was summoned. Fagan said that he did not see anyone stab the deceased nor did he see

anyone other than appellant holding a knife.

The doctor who performed the autopsy on the deceased stated that he discovered three stab wounds across the chest and abdomen of the deceased, each wound penetrating up to four inches. It was the doctor's opinion that these stab wounds were the cause of death.

Irene Draper testified that she was the barmaid at the Country Inn on the night in question. She said that she was behind the bar when appellant hit the deceased with a beer can. It was her impression of the scuffle that the deceased did not want to fight with appellant and Tress because he did not know them. She said appellant then pulled a large knife out of his pants and the fight started. She also said that all four men were fighting with each other and that Tress had a pool cue in his hand at some point during the fight. She stated that she did not see appellant stab the deceased, but she also stated that appellant was the only one she saw with a knife.

Ernest Tress testified for the defense and admitted killing Melancon. He stated that he had pled guilty to the charge and had been convicted and sentenced to ten years in the Texas Department of Corrections. He stated that during the fight he hit the deceased several times and knocked him down and when the deceased grabbed a bottle from the bar he grabbed his arm and stabbed him two or three times with a Case XX single-blade knife having a blade approximately five inches in length. He stated that the appellant did not know he had the knife or that he also had a pistol.

Officer D. R. Smith of the Harris County Sheriff's Department testified that he went to the Country Inn shortly after 9:00 p. m. on the night in question. He said he found the deceased slumped over in a chair and he could detect no vital signs. He learned from talking with persons in the lounge that appellant and Tress were involved in the fight and stabbing and that they left with appellant's wife in a maroon or red Thunderbird. He stated he knew appellant, his wife and Tress and also knew appellant's red Thunderbird when he saw it. The officer said he finished his investigation at the Country Inn and drove downtown to file a report. He put out a bulletin on his police radio to pick up appellant and Tress and warned that the suspects were dangerous.

Shortly after 2:00 a. m. the officer returned to patrol and observed appellant's vehicle driving east on Fourth Street. He saw the car turn in front of him and recognized appellant driving and his wife sitting in the passenger seat. He radioed for assistance and then stopped the vehicle. He stated that he stopped the vehicle because he believed "this vehicle to be the one we wanted in connection with the murder." He said he asked all three occupants to get out of the car. After searching them he "put them under restraint" and seated them in the back of his patrol car. Officer Smith stated that a fellow officer then arrived and conducted a search of appellant's vehicle and found a large kitchen butcher knife under the front seat of the car. This knife was later introduced into evidence, although Fagan and Miss Draper both testified that it was not exactly like the knife they saw in appellant's hand.

In his first ground of error appellant contends that the trial court erred in refusing to charge the jury on the law of circumstantial evidence. Appellant timely presented requested instructions and written objections to the charge which the trial court overruled.

The jury was instructed on the law of murder, criminal responsibility and reasonable doubt. The court then instructed the jury to convict appellant only if they found beyond a reasonable doubt that appellant, "acting alone or together with another," intentionally or knowingly caused the death of Melancon by cutting him with a knife.

Appellant relies on *Gamboa v. State*, 528 S.W.2d 247 (Tex.Cr.App.1975) and *Farris v. State*, 496 S.W.2d 55 (Tex.Cr.App.1973) for the proposition that it was error to refuse the requested charge on circumstantial evidence. Neither case is in point because neither involved a theory of criminal re-

sponsibility for the acts of another as does the instant case.

The cases of *Dickson v. State,* 492 S.W.2d 267 (Tex.Cr.App.1973) and *Morr v. State,* 507 S.W.2d 551 (Tex.Cr.App.1974) are more closely in point. In *Dickson,* a robbery case, there was direct evidence of the defendant's association with the robbers and there was direct evidence that he was present at the scene of the crime. Although the complaining witness could not state which of the five men who entered his store actually shot and robbed him, he testified that the defendant entered the store with the men and left with them after the money had been taken. We held there was no error in refusing the requested instruction on circumstantial evidence where the court charged the jury on the law of principals.

In *Morr v. State,* supra, there was direct evidence that a burglary had been committed by a "blonde-haired individual" who escaped. The defendant's connection with the burglary consisted of his presence at the scene and furtive gestures. The court charged the jury on the law of principals and instructed them that mere presence is not sufficient to constitute one as a principal. We held that even if the refusal to charge on circumstantial evidence could be construed as error, no harm was shown.

In *Ransonette v. State,* 550 S.W.2d 36 (Tex.Cr.App.1976), a kidnapping case, the victim could not identify the accused as one of her abductors. However, there was direct evidence that the accused aided his brother, whom the victim could identify, by driving him around to telephone booths to make ransom calls and acting as a lookout while the calls were made. There was evidence that he stood within a foot of his brother during one of the ransom calls to FBI agents. We held that this constituted direct evidence of his participation as a principal in the commission of the offense, and therefore it was not error to refuse the charge on circumstantial evidence where the court properly instructed the jury on the law of principals.

These three cases and the instant case are all distinguishable from *McBride v. State,* 486 S.W.2d 318 (Tex.Cr.App.1972), in which we reversed a conviction for possession of marihuana. We held that the court's instruction on the law of principals was not sufficient because the evidence that the accused was a principal was circumstantial and not direct evidence. The converse of that holding is the rule established in *Dickson v. State,* supra; *Morr v. State,* supra; and *Ransonette v. State,* supra; where there is direct evidence that the accused participated as a principal in the commission of an offense, a charge on circumstantial evidence is not necessary if the jury is properly instructed on the law of principals.

*Dickson, Morr* and *Ransonette* were all decided under the provisions of the former penal code concerning principals, accessories and accomplices. See Article 65, et seq., Vernon's Ann.P.C., V.T.C.A. Penal Code, Sec. 7.01, dispenses with the distinctions between principals and accessories and accomplices and is couched simply in terms of "criminal responsibility." However, the rules established in the cases discussed above remain the same.

■ In the instant case there is direct evidence of the appellant's participation in the offense. Tress and appellant initiated the fight with the deceased and Fagan. Two witnesses testified that appellant struck the deceased with a beer can. Those witnesses also testified that they saw appellant with a large knife in his hand. One of those witnesses · saw appellant strike the deceased with a pool cue.[1] In light of such direct evidence of appellant's participation as a criminally responsible party to the offense, it was not error to refuse the charge on circumstantial evidence where the trial court properly instructed the jury on law of criminal responsibility.

Appellant's first ground of error is overruled.

---

1. See *Binyon v. State,* 545 S.W.2d 448 (Tex.Cr. App.1976) for a discussion of sufficiency of the evidence in another case involving a barroom brawl and stabbing. The decision also involves the application of criminal responsibility under V.T.C.A. Penal Code, Section 7.01.

In his second ground of error appellant contends that the trial court erred in overruling his motion to suppress and admitting into evidence items seized from appellant's automobile because appellant's warrantless arrest was illegal. In his third ground of error appellant contends that even if his arrest was lawful the search of his automobile was unreasonable.

Officer Smith testified at the hearing on appellant's motion to suppress and gave testimony similar to his testimony at the trial on the merits, which is summarized above. He stated that appellant, his wife and Tress were all under custody in the back of his patrol car before the search of appellant's car was conducted. The items which appellant sought to suppress included the butcher knife found under the seat and items of clothing seized from appellant, his wife and Tress. Smith testified that Mrs. Loving and Tress both had blood stains on their clothing. A Houston Police Department Chemist testified that appellant's trousers had only traces of blood.

■ The evidence shows that Officer Smith had received information from witnesses to the stabbing that appellant and Tress were involved and that they left the scene in appellant's red Thunderbird. Smith stated he knew both suspects and also recognized appellant's car. Under these facts we find that the officer had probable cause to arrest appellant when he observed him driving the red Thunderbird only a few hours after the commission of the offense. Article 14.04, Vernon's Ann.C. C.P.; *Johnson v. State*, 436 S.W.2d 906 (Tex.Cr.App.1968); *O'Neal v. State*, 416 S.W.2d 433 (Tex.Cr.App.1967); *Edmond v. State*, 169 Tex.Cr.R. 637, 336 S.W.2d 946 (1960).

■ The search of the car subsequent to the arrest was not unreasonable. A similar contention was raised and overruled in *Scott v. State*, 531 S.W.2d 825 (Tex.Cr.App. 1976).

Appellant's second and third grounds of error are overruled.

The judgment is affirmed.

Opinion approved by the Court.

## ON APPELLANT'S MOTION FOR REHEARING

ROBERTS, Judge, dissenting.

The majority denies the appellant's motion for rehearing without written opinion. I would grant the motion and reverse the judgment because of the trial judge's refusal to give a charge on circumstantial evidence.

On original submission, this Court held that there was direct evidence of the appellant's participation as a criminally responsible party to the offense, and that in light of this direct evidence it was not error to refuse the charge on circumstantial evidence where the trial judge properly instructed the jury on the law of criminal responsibility. In my opinion, this Court's opinion in *Ransonette v. State*, 550 S.W.2d 36, 42 (Tex.Cr.App.1976) (Opinion on the Appellant's Motion for Rehearing), is in direct conflict with our disposition of this cause on original submission.

It is well established that direct evidence is that evidence which directly demonstrates the main fact to be proved. Circumstantial evidence, on the other hand, is that evidence which directly proves a secondary fact which, by logical inference, demonstrates the main fact. *Crawford v. State*, 502 S.W.2d 768 (Tex.Cr.App.1973). In *Ransonette v. State*, 550 S.W.2d 36, 43 (Tex.Cr.App.1976) (Opinion on the Appellant's Motion for Rehearing), this Court stated that:

"A charge on circumstantial evidence is required only where the evidence of the main fact essential to guilt is purely and entirely circumstantial. See e. g. *Wilson v. State*, 154 Tex.Cr.R. 59, 225 S.W.2d 173 (1949). A charge on circumstantial evidence is necessary only when the State's case depends entirely upon circumstances for conviction. See e. g.*Nailing v. State*, 152 Tex.Cr.R. 161, 211 S.W.2d 757 (1948); *Wells v. State*, 134 Tex.Cr.R. 412, 115 S.W.2d 658 (1938). An instruction as to circumstantial evidence need not be given

where the State relies only in part on circumstantial evidence, *Lawler v. State,* 110 Tex.Cr.R. 460, 9 S.W.2d 259 (1927); *Coleman v. State,* 90 Tex.Cr.R. 297, 235 S.W. 898 (1921), even though the State relies on a chain of circumstances that may be considered the major part of the evidence on which the State relies for conviction. *Dodd v. State,* 149 Tex.Cr.R. 156, 192 S.W.2d 263 (1946). See 31 Tex. Jur.2d 682–683, Instructions, Sec. 123; *Morris v. State,* 402 S.W.2d 161 (Tex.Cr. App.1966); *Russell v. State,* 396 S.W.2d 117 (Tex.Cr.App.1965)."

In the present case, the main fact to be proved was that the appellant was a principal offender. There was direct evidence that: (1) the appellant hit the deceased with a beer can and a pool cue; (2) the appellant pulled a knife out of his pocket; (3) the appellant brandished a kitchen butcher knife in one hand and two pool cues in the other during the fight; (4) the appellant fought with Fagan while Tress fought with the deceased; (5) the appellant was the only person seen with a knife in his hand; (6) the appellant was not aware that Tress had a knife or a pistol; (7) Tress killed the deceased; (8) no one saw who stabbed the deceased; (9) a knife was found approximately five hours after the homicide in the car the appellant was driving; and (10) the deceased died of stab wounds.

The direct evidence is not direct evidence that the appellant stabbed the deceased or that he knew Tress would stab the deceased. The direct evidence is likewise not direct evidence that the appellant encouraged, aided, directed or attempted to aid or direct the stabbing. Rather, the direct evidence is direct evidence that the appellant and Tress were both actively engaged in a fight with the deceased and Fagan. The fight, therefore, was a secondary fact from which an inference could be drawn. This inference, which is also supported by direct evidence in the form of Tress' testimony, is that the fatal wounds were inflicted during the fight.

Thus, the appellant's guilt could have been proven in either one of two ways.

First, if the jury chose to disbelieve Tress' testimony, then the direct evidence yielded only an inference that the fatal wounds were inflicted during the fight. The jury would then have had to infer from this inference that the appellant was party to the offense. Second, if the jury believed that Tress inflicted the fatal wounds, then there was direct evidence that the fatal wounds were inflicted during the fight. However, the jury would have still had to infer from this fact that the appellant was a party to the offense. In either case, the only manner in which the State could have proven that the appellant was criminally responsible for the deceased's death was by an inference. There was a total absence of direct evidence that the appellant either stabbed the deceased, that he knew Tress would stab the deceased, or that he encouraged, aided, directed or attempted to aid or direct the stabbing. None of the facts, either separately or taken together, *directly* prove that the appellant was guilty as a party to the offense.

Moreover, although an instruction on the law of principals was given, the necessity for an instruction on circumstantial evidence was not eliminated. *Ransonette v. State,* supra; *McBride v. State,* 486 S.W.2d 318 (Tex.Cr.App.1972). Therefore, a circumstantial evidence charge should have been given. The failure to do so was reversible error.

For the foregoing reasons, I would grant the appellant's motion for rehearing, reverse the judgment and remand the cause for a new trial.