Lynn ARNEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 56440.

Court of Criminal Appeals of Texas, Panel No. 3.

May 16, 1979.

Tomas G. Pollard, Jr., Tyler, for appellant.

Harry R. Heard, Dist. Atty., Gilmer, and Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

## OPINION

DALLY, Judge.

This is an appeal from a conviction for conspiring to commit aggravated robbery. Punishment was assessed by the jury at imprisonment for fifteen years.

Appellant contends that the evidence is insufficient to sustain the conviction, the indictment is defective, the trial court erroneously refused to instruct the jury on the defense of alibi and the law of circumstantial evidence, and the trial court erred in denying appellant's request for a recess of the hearing on his amended motion for new trial.

The complainant Jennings Whitter was beaten, shot, and robbed early on the morning of February 12, 1976, when he entered his barn. Whitter was struck on the head from behind and did not see his assailants. Appellant was charged with conspiring with Marion Coulston and Roland Bassham to rob Whitter.

Clarence Haley testified that on the night of February 11 he was present at Coulston's house in Gladewater with Coulston, appellant, Tim Barlow, a man named "Pete," and Joe John Stasney. Haley testified that he, Coulston, and Stasney subsequently went to Stasney's house where he heard Coulston tell Stasney to pick him (Coulston) up early the next morning, drop him off at Whitter's barn, and then wait for him down the road. Haley testified that the day after the robbery appellant and Coulston conferred in private for thirty to forty minutes at Coulston's house, and appellant subsequently stated that Coulston shot Whitter in the back of the neck because Coulston was angry that Whitter did not have any money and that he (appellant) was glad that he was not the one who knocked Whitter in the head because he could go to prison for that. Haley also testified that prior to Christmas of 1975 he heard appellant tell Coulston that he knew of some people who would be "easy rip-offs" and that appellant named Whitter among others. Haley denied helping plan the robbery.

Coulston testified for the State as an accomplice witness that on the night preceding the offense he, appellant, Bassham, Barlow, Stasney, Joe Thompson, and Haley all conspired to rob Whitter. According to Coulston the group met at his house at 6:30 or 7:00 p. m., discussed the robbery, then drove to appellant's trailer house in appel-

lant's wife's car. After that they drove to Whitter's farm where they sat and drank beer. Coulston admitted that he robbed Whitter in the barn the next morning. Coulston testified that Haley was a member of the conspiracy.

In his defense appellant testified that he, Barlow, and Haley worked in Stonewall, Louisiana on the 9th, 10th, and 11th of February. They left Stonewall at 6:30 p. m. on the 11th, drove in appellant's truck back to Gladewater where appellant and Barlow dropped Haley off at Stasney's house, then drove to appellant's trailer house, where they arrived between 9:30 p. m. and 10:30 p. m. Appellant further testified that while he and Barlow were eating supper at appellant's trailer, Coulston, Haley, and Stasney drove up. According to appellant they were talking about robbing Whitter, but he did not take them seriously because he thought they were "high" on drugs, and he did not enter into the conspiracy. Appellant testified that just before the three left Haley said, in reference to the planned robbery, "Well, let's go and get it over with." Appellant testified that he spent the night at his trailer house with Barbara Pate and went to work the next morning with Barlow. Barlow testified to substantially the same facts as appellant.

Pate, who lived with appellant during the period in question, testified that appellant and Barlow arrived at appellant's trailer house between 8:00 p. m. and 9:00 p. m. on the night of February 11th. At 9:30 p. m. as she and appellant and Barlow were eating supper, Coulston, Stasney, and Haley arrived. Appellant went outside, then returned and told Pate the three men were planning to "burglarize the Whitter place," but that he wanted nothing to do with it. Pate testified that she overheard Haley state: "I am ready to get this over with, let's get after it." The three visitors then left. Pate testified that she and appellant spent the night together and appellant went to work with Barlow the next morning.

The trial court instructed the jury that Coulston was an accomplice witness as a

matter of law and allowed the jury to determine whether Haley was an accomplice witness as a matter of fact; i. e., that Haley's testimony would constitute accomplice witness testimony only if the jury concluded that Haley was a member of the conspiracy. The court also properly instructed the jury that if they found Haley to be an accomplice, his testimony could not serve to corroborate Coulston's testimony and other independent corroborative evidence would be required in order to convict appellant.

■ Appellant contends that Haley was clearly shown to be an accomplice as a matter of law and the conviction cannot stand because it is based solely on the testimony of two accomplice witnesses. Although the other witnesses testified that Haley was present and had knowledge of the conspiracy to rob Whitter, Haley denied taking part in the conspiracy. Mere presence at the scene of the offense does not compel the conclusion that the witness is an accomplice witness. *Easter v. State*, 536 S.W.2d 223 (Tex.Cr.App.1976); *Howard v. State*, 90 Tex.Cr.R. 164, 233 S.W. 847 (1921); 24 Tex.Jur.2d, Evidence, Sec. 690, p. 312. When there is a question as to whether a witness is an accomplice, it is proper to submit that issue to the jury, and this is sufficient even though the evidence appears largely to preponderate in favor of the witness being an accomplice. *Allen v. State*, 461 S.W.2d 622 (Tex.Cr.App.1970); *Gonzales v. State*, 441 S.W.2d 539 (Tex.Cr.App. 1969) and the cases there cited. It is only when the evidence clearly shows that the witness is an accomplice witness as a matter of law that the trial court has a duty to so instruct the jury. *Allen v. State*, supra; *Gonzales v. State*, supra; 24 Tex.Jur.2d, Evidence, Sec. 691, p. 317. See also *Lafoon v. State*, 543 S.W.2d 617 (Tex.Cr.App.1976); *Silba v. State*, 161 Tex.Cr.R. 135, 275 S.W.2d 108 (1954).

■ We cannot say from the record before us that the evidence without doubt shows that Haley was an accomplice witness as a matter of law or that the jury was unreasonable in concluding, as they obviously did, that Haley was not an accomplice witness. Haley's testimony was sufficient to corroborate Coulston's accomplice testimony, and we find the evidence sufficient to support the conviction.

Appellant alleges that he was convicted of an offense different from the one charged in the indictment. Appellant was convicted of conspiracy to commit aggravated robbery; he argues that the indictment only alleges conspiracy to commit robbery. The indictment alleges that appellant:

". . . with intent that the offense of robbery be committed agree[d] with Marion Edward Coulston and Roland Bassham to while in the course of committing theft of money of the United States, hereinafter called the property, from Jennings Whitter, with intent to obtain and maintain control of the property, knowingly and intentionally cause bodily injury to Jennings Whitter and, in pursuance of such agreement, Marion Edward Coulston did shoot the said Jennings Whitter with a gun while attempting to commit robbery of the said Jennings Whitter."

A person commits criminal conspiracy under Sec. 15.02 of our penal code if, with intent that a felony be committed:

"(1) he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense; and

"(2) he or one or more of them performs an overt act in pursuance of the agreement."

A person commits aggravated robbery under Sec. 29.03 of our penal code if he commits robbery as defined in Sec. 29.02, and he:

"(1) causes serious bodily injury to another; or

"(2) uses or exhibits a deadly weapon."

■ The indictment, broken down to its elements, alleges that appellant (1) with intent to commit robbery (2) agreed with Coulston and Bassham to rob Whitter (the elements of robbery then being alleged), and (3) in pursuance of the agreement Coulston shot Whitter with a gun while at-

tempting to rob Whitter. Thus the indictment alleges the intent, agreement, and overt act required to commit criminal conspiracy under Sec. 15.02, supra. It also alleges the elements of the offense of robbery and the exhibition and use of a gun during the commission of the offense. Thus the indictment alleges the elements of aggravated robbery. The indictment, although certainly not a model for future drafting efforts, is sufficient to allege the offense of conspiracy to commit aggravated robbery. Appellant's contention is overruled.

■■ Appellant contends that the court erred in refusing his requested jury instruction on the defense of alibi. The defense of alibi arises when there is evidence that the accused is at a place where he could not have been guilty of participating in the offense. *Nelson v. State*, 511 S.W.2d 18 (Tex.Cr.App.1974); *West v. State*, 140 Tex. Cr.R. 493, 145 S.W.2d 580 (1940) (Opinion on Appellant's Motion for Rehearing). A charge on alibi need not be given unless the evidence is inconsistent with the State's case which puts the defendant at the scene at the time of the commission of the offense. *Lee v. State*, 454 S.W.2d 207 (Tex. Cr.App.1970); *Washburn v. State*, 167 Tex. Cr.R. 125, 318 S.W.2d 627 (1958).

■ Appellant's testimony shows that he spoke with Coulston, Haley, and Stasney at his trailer house on the night preceding the robbery. Barlow and Pate corroborated these facts with their testimony. This evidence regarding appellant's whereabouts is consistent with the State's case. It shows that appellant was in the presence of alleged conspirators on the night that they conspired to rob Whitter. The defense of alibi was not raised, and no error is shown.

Appellant complains of the trial court's refusal of his requested instruction on circumstantial evidence. Appellant alleges such an instruction was required because the overt act of Coulston's shooting Whitter with a gun was not shown by direct evidence. Whitter did not testify that Coulston shot him in the barn, but did testify that the doctor who operated on him after he had been taken to the hospital after the offense told him that he had a bullet in his head. When asked by the prosecutor whether he shot Whitter, Coulston testified:

"A. I don't remember shooting him but I said I did. I don't remember shooting the man, don't even remember taking the gun with me.

"Q. But you do know you attempted to rob Jennings Whitter?

"A. Yes, I do."

■ The evidence that Coulston shot Whitter was circumstantial in nature. However, a charge on circumstantial evidence is required only where the evidence of the main fact essential to guilt is purely and entirely circumstantial. *Ransonette v. State*, 550 S.W.2d 36 (Tex.Cr.App.1977) (Opinion on Appellant's Motion for Rehearing); *Wilson v. State*, 154 Tex.Cr.R. 59, 225 S.W.2d 173 (1949). Such a charge is necessary only when the State's case depends entirely, not just in part, upon circumstances for conviction. *Ransonette v. State*, supra; *Nailing v. State*, 152 Tex.Cr.R. 161, 211 S.W.2d 757 (Tex.Cr.App.1948); *Lawler v. State*, 110 Tex.Cr.R. 460, 9 S.W.2d 259 (1927). There was direct evidence that appellant agreed to rob Whitter. Moreover, Coulston testified that he "attempted to rob" Whitter, as alleged in the indictment. This was sufficient to show an overt act in pursuance of the conspiracy and rendered a charge on circumstantial evidence unnecessary. No error is shown.

■ Finally, appellant complains of the trial court's denial of his request for a recess of the hearing on his amended motion for new trial. Appellant timely filed his original motion for new trial on January 28, 1977. On February 10, appellant filed a motion for leave to file an amended motion for new trial, and also filed an amended motion for new trial in which he alleged for the first time jury misconduct in considering parole law in reaching a decision on the punishment to be assessed. A hearing on the amended motion for new trial was scheduled by the court for February 17. At the hearing Juror Adolphus Hargest testi-

fied that although the jurors discussed parole law they did so only after they had decided to assess punishment at imprisonment for fifteen years, and they did not consider parole law in reaching their decision on punishment.

Appellant requested a recess of the hearing on grounds unrelated to the jury misconduct issue. The court granted a recess until February 21, at which date the hearing resumed. After the testimony of two witnesses on an issue unrelated to the jury misconduct issue, appellant requested another recess "for the purpose of subpoening [sic] the eleven jurors who have not been questioned upon the issue of jury misconduct." It is the denial of this request of which appellant complains.

Appellant had ample time in which to question and subpoena the other eleven jurors. The hearing had already been reset once. Appellant did not exercise due diligence in obtaining his witnesses. Moreover, appellant did not produce any affidavits from the other jurors or make any other showing that those jurors would testify differently than Hargest. The trial court did not err in refusing appellant's request for a second recess. See *Stephenson v. State*, 494 S.W.2d 900 (Tex.Cr.App. 1973); *Carpenter v. State*, 473 S.W.2d 210 (Tex.Cr.App.1971); *Stubbs v. State*, 457 S.W.2d 563 (Tex.Cr.App.1970).

The judgment is affirmed.

CLINTON, Judge, dissenting.

From the conclusion that the indictment is sufficient to and does allege the offense of conspiracy to commit aggravated robbery, I respectfully dissent. My own view is that the statement of the overt act that followed the agreement to engage in conduct that would constitute a felony offense may not serve to upgrade the offense that is alleged to be the object of the agreement. Here the indictment expressly names the intended offense as "robbery" and then alleges every ultimate fact of that offense as prescribed by V.T.C.A., Penal Code Section 29.02(a)(1)[1]. Until the statement of the overt act, then, the indictment charged appellant with criminal conspiracy to commit the offense of robbery only.

The offense of criminal conspiracy consists of an intent that a particular felony be committed, an agreement to engage in conduct that would constitute that offense and performance of an overt act in pursuance of the agreement. The latter element is said to be "new to Texas law," Practice Commentary 1 V.T.C.A., Penal Code, 522, but it is axiomatic in other jurisdictions which have modified the common law rule that the overt act in pursuance of the conspiracy "need not be in itself a criminal or unlawful act," 15A C.J.S. 750 Conspiracy, § 43(2), n. 86. Even though performance of an overt act is required, the gist of the offense remains the agreement to engage in feloniously offensive conduct for the purpose of requiring an overt act to give conspirators an opportunity to abandon their undertaking and avoid penalty before it is put in operation by some decisive act. *Id.* at 747, Conspiracy § 43(1) ns. 73, 73.5 and 73.10. Plainly then the office of an allegation that a particular overt act in pursuance of the agreement was performed is other than further to define the terms and objective of the agreement.

Convinced, therefore, that the indictment in this cause clearly alleges an intent and agreement to commit the offense of robbery in describing the criminal conspiracy, I dissent to application of the notion that an allegation of an overt act involving using or exhibiting a deadly weapon may be utilized to "bootstrap" the offense to the higher grade of aggravated robbery.

1. "(a) A person commits an offense if, in the course of committing theft . . . and with intent to obtain and maintain control of the property, he:

(1) intentionally, knowingly . . . causes bodily injury to another . . . ."